*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-016

FEBRUARY TERM, 2016

| | |
|---|---|
| In re Nikolay Gergov | } APPEALED FROM: |
| | } |
| | } Superior Court, Rutland Unit, |
| | } Civil Division |
| | } |
| | } DOCKET NO. 387-5-12 Rdcv |
| | |
| | Trial Judge: Cortland Corsones |

In the above-entitled cause, the Clerk will enter:

Petitioner appeals from the trial court's denial of his petition for post-conviction relief (PCR), based on a claim of ineffective assistance of counsel. He argues that the evidence does not support the court's findings and conclusions.

We affirm based on the trial court decision below, which is attached to this decision. Essentially, petitioner seeks to relitigate this case through his brief on appeal. The trial court did not ignore petitioner's evidence. It considered petitioner's evidence and found it unpersuasive. It addressed and rejected petitioner's arguments. The fact that petitioner disagrees with the court's conclusions does not demonstrate error. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion). We do not restate all of the court's findings set forth above. We have considered all of petitioner's arguments and find them without merit. As the trial court recognized, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. 668, 689 (1984). Given the difficulty in assessing counsel's performance in hindsight, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotation omitted). Petitioner failed to overcome that presumption here.

The court explained why counsel's strategy on the timing and methods of discovery was reasonable under the circumstances. It explained why, under all of the circumstances, it was not unreasonable for counsel not to have deposed the victim and her mother, and why counsel's failure to review the videotape of petitioner's police-station interview was not unreasonable. See id. ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). The trial court found that counsel tried to have the State reduce the charge, and it is self-evident that the State refused to do so. The court's findings support its conclusion that counsel's strategy of first challenging the confession and seeking to reach a plea agreement desired by his client was within the range of acceptable strategies. As the U.S. Supreme Court has emphasized, "[t]he benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. Applying this principle here, the court's findings demonstrate that trial counsel "play[ed] the role necessary to ensure that" the process was fair. We find no basis to disturb the court's decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

2

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Rutland Unit | CIVIL DIVISION<br>Docket No. 387-5-12 Rdcv |
| Gergov, Nikolay, In Re: | DECISION ON THE MERITS |

## DECISION ON MERITS

The above-captioned matter came on regularly for a trial on Petitioner's complaint for Post-Conviction Relief on October 30, 2014. Petitioner was present and was represented by his attorney, Paul S. Volk, Esq. The State was represented by Marc D. Brierre, Esq. The court heard the evidence. The testimony consisted of live testimony in court and deposition testimony introduced into evidence by agreement. Based on the credible evidence adduced, and the pleadings and papers on file herein, the court issues the following decision:

### Findings of Fact

Overall, the court finds the testimony of Matthew Branchaud to be significantly more credible than the testimony of Petitioner. Petitioner's testimony was strongly influenced by his desire to be off probation and to be out from under the sex offender conditions.

Petitioner was charged in the Rutland Criminal Division with Lewd and Lascivious Conduct with a Child. He was arraigned on July 12, 2010. He was charged with inappropriately touching his 15 year old stepdaughter. Before being charged, the police met with him to discuss the allegations. The police officer (Detective Michael Notte) met with him at his home and then at the police station. At the police station Petitioner waived his Miranda Rights and confessed to the crime. He did not agree with all the statements made by the victim, but he agreed with enough of the details to make out the elements of the crime. At the police station, the police

1

officer interviewed Petitioner and then wrote out a statement for him to sign, which he did. The statement said:

> On July 9, 2010 around 4:00 AM I got up for work and went into the kitchen. My step-daughter was sleeping on the couch. She was wearing a T-shirt and panties. Her shirt was pulled up halfway her chest. I pulled her shirt down. I got curious and rubbed her buttocks on the lower part, closer to her vagina. By this time she rolled onto her side. I looked a [sic] her vaginal area but did not touch it. I looked at it over her panties. I did this for sexual reasons. I wanted to feel what it feels.
> Q. Did you touch her breast.
> A. No, possibly accidently when I rolled her shirt down.
> Q. Did you touch her vaginal area?
> A. Not intentional, maybe by accident when I was touching the lower part of her butt.
> Q. Did you penetrate her at all?
> A. No.
> Q. Who is your step daughter?
> A. [A.H.]
> Q. How did the police treat you today?
> A. Very well and respectful understanding.
> Q. Did you feel like you were in custody at(?) your apt. when I was there?
> A. No.

See *Ex. 1*, Attachment 2. Petitioner signed the statement under oath.

Soon after the arraignment, Matthew Branchaud was assigned to represent Petitioner pursuant to his assigned counsel contract. At that time, Mr. Branchaud had been an attorney for 5 years. His practice was 70% criminal and he had experience representing clients in serious sex crimes.

After Mr. Branchaud starting representing Petitioner, he met with him or spoke with him on a regular (approximately weekly) basis. Mr. Branchaud did not keep notes from this contact. Petitioner was actively involved in his case, and stayed in regular contact with his attorney. Petitioner made it clear to his attorney early on that he did not want a trial. What was important to Petitioner was that he not lose his job; that he receive probation; and that he not go to jail. Petitioner had a good job with Omya. It was of paramount importance to him to keep his job.

Mr. Branchaud requested initial discovery from the State. He reviewed the State's discovery. He reviewed the CD of recorded phone calls made by the victim to Petitioner. He

2

reviewed the CD of the victim's interview with DCF and the investigating officer (Det. Notte). Mr. Branchaud did not review the VHS tape of the Petitioner's interview at the police station. Mr. Branchaud carefully reviewed the Petitioner's signed confession with him. Petitioner did not disagree with anything in the statement. Petitioner confirmed the correctness of his statement to the police to Mr. Branchaud. Petitioner was unable to articulate his sexual motive to Mr. Branchaud, other than to say "sexual reasons." *Ex. 11*, p. 52. Mr. Branchaud felt Petitioner was being "hesitant" on this issue. *Ex. 11*, p. 51. Mr. Branchaud discussed the interview with the police, both at Petitioner's house and at the barracks, at length with Petitioner. Petitioner did not feel that the interview at the police station was coercive. He did say he felt coerced at his house.

As a result of his initial work on the case, and as a result of Petitioner's position on the case, Mr. Branchaud determined that it was critical to the case to try to suppress Petitioner's confession. On November 2, 2010 Mr. Branchaud filed a Notice of Depositions to take the depositions of the victim, her mother (Nicole Davis), and Det. Michael Notte at Mr. Branchaud's office on November 12, 2010. Before the date of the depositions, the depositions of the victim and Ms. Davis were postponed. They were postponed for several reasons. The State's Attorney indicated that he would be filing a request to treat the victim as a sensitive witness (pursuant to V.R.Cr.P. 15(f)(2)). Ms. Davis had been pressuring Petitioner not to take her deposition. Petitioner and she had an ongoing relationship and Ms. Davis was pregnant with Petitioner's child. This created a delicate situation. Petitioner wanted to try to stay on her good side. In addition, on the date set for her deposition, Ms. Davis was sick due to her pregnancy, so her deposition had to be postponed.[1] The deposition of Det. Notte went forward, and the depositions of the other witnesses were postponed. This was also consistent with Mr. Branchaud's strategy of first trying to suppress the confession.

---

[1] See Ex. 15, p. 8 (The transcript of the court hearing held 11/22/10).

3

On February 11, 2011, Mr. Branchaud filed a Motion to Suppress Statements of Defendant with the court. He reviewed the motion with Petitioner in advance. Based on his research and discussions with more experienced criminal defense attorneys, Mr. Branchaud did not believe that he had a good chance of success with his motion. However, he also believed that filing the motion would give him leverage with the State in reaching an acceptable plea agreement. The parties discussed a plea agreement well in advance of the scheduled Motion to Suppress hearing. The parties went back and forth with proposals. Petitioner was in the loop with the negotiations. Mr. Branchaud tried to get the State to agree to a Prohibited Acts charge, but the State would not move from the charged felony. Before the day of the Motion to Suppress hearing, the parties reached an agreement, in principal, on a plea agreement. Petitioner was in agreement with the deal. The agreement met all of Petitioner's criteria, except one. Petitioner did not want to go to jail, but he agreed to a short jail sentence if it could be served on weekends; thus preserving his job.

The parties reached their agreement in principal before the scheduled Motion to Suppress hearing. However, they did not inform the court of their agreement until going to court on the day of the hearing. On the day of the suppression hearing, April 26, 2011, the attorneys informed the judge that they had reached a plea agreement. They advised the court that the general parameters of the agreement were 2 years to 15 years, suspended with probation, except for 40 days to serve on consecutive weekends, with the full panoply of offender conditions. There was some confusion over the minimum sentence. The State's Attorney initially informed the judge that the minimum sentence was 5 years. Mr. Branchaud corrected him and said the minimum sentence was 2 years. Later, after reviewing the emails from the State's Attorney, Mr. Branchaud concluded, and the later written plea agreement reflected, that he and Petitioner had agreed to a minimum sentence of 3 years. At the scheduled suppression hearing, the parties advised the judge that they could not do a change of plea that day because of the necessary

4

paperwork attendant with this type of case. The parties waived a PSI and the judge indicated that she was comfortable with that. Everyone agreed to set the case for a change of plea hearing.

The change of plea hearing was scheduled and heard on June 15, 2011. The State's Attorney forwarded the proposed change of plea documents to Mr. Branchaud in advance of the scheduled hearing. The paperwork included the Plea Agreement of the State and Nikolay Gergov, Acknowledgement of Responsibility, and Special Conditions of Probation. It is not clear whether Attorney Branchaud reviewed the paperwork with Petitioner before the day of the change of plea hearing. However, Petitioner was aware of the parameters of the agreement well in advance of the change of plea hearing.

On the day of the change of plea hearing, Mr. Branchaud reviewed the paperwork with Petitioner carefully at his office. Petitioner understood the paperwork and agreed to all the terms. He signed and initialed the paperwork as appropriate. Mr. Branchaud reviewed the Special Conditions of Probation with Petitioner, line by line. Petitioner understood them. The Special Conditions included that he would "enroll, attend and satisfactorily participate in sexual offender treatment;" and that he would "comply with the sex offender registry and all relevant laws in relation to the sex offender registry and sex offender notification requirements." *Ex. 8.* After all the paperwork was reviewed and signed, the change of plea hearing occurred. Petitioner plead guilty to the charge and admitted that "on or about July 9, 2010, at Rutland, [he] willfully and lewdly committed a lewd or lascivious act upon the body of a child, that being Juvenile A, date of birth, November 8, 1994, who was under the age of sixteen, any [he] did so with the intent of appealing to the sexual desires of [him]self." *Ex. 3.* The judge accepted the stipulated sentence and placed him on probation "until further order of the court." *Ex. 3.* There was nothing in the change of plea paperwork indicating the length of the probationary sentence.

During the course of the case, Mr. Branchaud filed several motions to amend conditions of release on behalf of Petitioner. At Petitioner's request, Mr. Branchaud filed a motion to allow

5

Petitioner to have contact with his wife (the mother of the victim), Nicole Davis, and to move back in with her. Petitioner stated that the victim would be moving out of the house, and he would not move back in until she had left. A hearing was held on the motion on September 8, 2010. Ms. Davis testified at the hearing that the victim would be moving out of her house and that she wanted Petitioner to move back in with her. At the hearing, the State's Attorney asked Ms. Davis the following question, "Ma'am, do you know that your daughter is the victim of this man?" Ms. Davis replied, "Yes. And she's also stated that it didn't happen." *Ex. 14*, p. 8. At the conclusion of the hearing, the judge granted the request for contact. Subsequently, Ms. Davis changed her mind, and no longer wanted to have contact with Petitioner. Furthermore, the victim had not moved out of her house. As a result, the State filed a motion seeking to reinstate the no contact provision. A hearing was held on the State's motion on November 22, 2010. The court reinstated the no contact provision. At that hearing, Mr. Branchaud also informed the court that at the previous hearing, Ms. Davis had told him that she believed that the statements her daughter was making were false or grossly misstated. Mr. Branchaud informed the court that he had discussed that with the State's Attorney. *Ex. 15*, p. 10.

There was a disagreement in the testimony as to whether Mr. Branchaud told Petitioner that he would be receiving a short probationary sentence. Petitioner's position is that is what Mr. Branchaud told him. Mr. Branchaud denied saying that. Mr. Branchaud testified that based on his recollection he told Petitioner that as a result of the plea agreement he was going to be under lifetime supervision. *Ex. 11*, p. 38. The plea negotiations were occurring during the time of the Brooke Bennett case, and Mr. Branchaud testified that would not have told Petitioner that he would be on probation short-term. At trial, Petitioner's (now) former wife, Nicole Davis testified. She testified that during the time that the parties were negotiating the plea agreement, she and Petitioner were talking. Petitioner told her that the sentence included long-term probation and 40 days in jail. The court finds the testimony of Mr. Branchaud and Ms. Davis to

6

be credible on this issue. The Petitioner was advised and understood that as a result of his plea agreement, he would be faced with the potential for lifetime supervision. He had been advised of this in advance of the change of plea hearing.

Petitioner's expert witness, John L. Pacht, Esq. testified in the case. Mr. Pacht is an experienced criminal defense attorney. He testified that based on a "totality of the circumstances," Mr. Branchaud's representation "fell below an objective standard of reasonableness." *Ex. 12*, p. 15. Mr. Pacht found that the second prong of the *Strickland* test was more difficult to assess, but he did conclude that "there is a reasonable probability that the result would have been different had counsel's representation been effective." *Ex. 12*, p. 4. Mr. Pacht opined that Mr. Branchaud ineffectively prepared and investigated the case, and had his representation been effective, it could have resulted in a plea to an amended charge of Prohibited Acts, a misdemeanor, instead of the felony.

### Conclusions of Law

When a PCR asserts ineffective assistance of counsel, "the petitioner must first show that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms." *State v. Bristol*, 159 Vt. 334, 337 (1992), citing, *Strickland V. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). If that burden is met, the Petitioner must then show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Therefore, even a professionally unreasonable error by counsel does not warrant setting aside a criminal judgment if the error did not affect the judgment. *Id.* The court must discern "whether, despite the strong presumption of reliability, the result of a particular proceeding is unreliable because ineffective counsel caused a breakdown in the adversary process." *Id.* "Because the plea bargain stage is critical to a criminal proceeding, fundamental attorney error at that stage may invalidate a conviction." *Id.*

7

As stated above, a petitioner claiming ineffective assistance of counsel must first show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms. This is a "heavy burden" for a petitioner to meet because courts give trial counsel "a great deal of discretion in decisions regarding trial strategy." *In re Kirby*, 2012 VT 72, ¶ 11, 192 Vt. 640 (mem.) (recognizing "a strong presumption of reasonableness in an attorney's performance"). Courts do not measure the reasonableness of a particular trial strategy by whether it succeeded or failed; rather, courts assess an attorney's decision to pursue a given legal theory for reasonableness under "all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In adopting this standard, the Vermont Supreme Court has quoted the following reasoning from the U.S. Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance....

*In re Pernicka*, 147 Vt. 180, 183, 513 A.2d 616 (1986) (quoting *Strickland*, 466 U.S. at 689 (citations omitted)). "In other words, Petitioner must show that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Gilday v. Garvey*, 919 F.Supp. 506, 512, (D.Mass. 1996), citing, *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. "This standard demands a tolerant approach, as the Constitution guarantees neither a letter-perfect nor a successful defense." *Id.* In reviewing counsel's performance under the appropriate standard, the court cannot conclude that Petitioner has met his burden of proving that that counsel's

8

performance fell below an objective standard of reasonableness informed by prevailing professional norms.

Petitioner's expert testified that Mr. Branchaud ineffectively prepared and investigated the case. The court disagrees with this conclusion. The expert's opinion does not sufficiently take into consideration counsel's strategic choices and the facts and circumstances he faced. The expert opines that Mr. Branchaud "fail[ed] to investigate the complainant or her mother." *Ex. 12*, p. 15. Initially, the court notes that Mr. Branchaud did speak with Ms. Davis outside the courtroom and was aware of what she said the victim had told her. Also, Mr. Branchaud reviewed the CD of victim's statement to DCF and the investigating officer, so he knew what she had told the authorities about the incident. In addition, Mr. Branchaud knew from his client that his signed statement to the police was an accurate recitation of the events. It is also significant that the case settled before going to trial. Mr. Branchaud had noticed the depositions of the victim and Ms. Davis. They were postponed because the State was raising the sensitive witness issue with the victim and there were complicating factors in taking Ms. Davis' deposition on the date set. The complicating factors included that Ms. Davis was putting pressure on Petitioner not to have her deposition taken, and she was ill on the date of the deposition due to her pregnancy. The option of taking the depositions at a later date remained open. However, after the depositions were postponed, the parties entered into plea negotiations which resulted in a plea agreement satisfactory to the Petitioner. Petitioner had advised his attorney, consistently, that he did not want to go to trial; that what he was really looking for was to be able to keep his job, receive a probationary sentence, and not go to jail. Although the plea agreement reached required 40 days of incarceration, it was structured so that Petitioner could serve his time on the weekends, and therefore, retain his job. The plea agreement, in general, met Petitioner's stated goals.

9

Petitioner was in a difficult position when it came to deposing the victim and Ms. Davis, and he informed Mr. Branchaud of this. Petitioner wanted to remain on good terms with Ms. Davis, as she was carrying his child. He wanted to have an ongoing relationship with his child after the child's birth. The plea agreement that was reached met Petitioner's goals, and it meant that the victim and Ms. Davis did not need to be deposed. It is true that the discovery date for the completion of depositions passed while the parties were negotiating their plea agreement. However, under the circumstances, it appears unlikely that the court would have prevented Mr. Branchaud from seeking to depose the victim and Ms. Davis after the deposition deadline, had this become necessary. Mr. Branchaud had noticed the depositions within the appropriate time frame. The depositions were then continued by mutual agreement of the parties, for the reasons stated in this opinion. The depositions were not re-scheduled due to the successful plea negotiations. The court also notes that the State did not object to Mr. Branchaud filing his Motion to Suppress out of time, and the court set that motion for a hearing. In short, it may have been ineffective assistance of counsel to go to trial without taking (or attempting to take) the deposition of the victim and not taking the deposition of Ms. Davis. However, that is not what happened here. No trial was necessary due to the negotiated plea agreement.

Under the circumstances presented, Mr. Branchaud's strategy of first challenging the confession and seeking to reach a plea agreement desired by his client was within the wide range of acceptable strategies. His strategy on the timing and methods of discovery was similarly reasonable under the circumstances.

Petitioner's expert faults Mr. Branchaud for not reviewing the VHS tape. This is a fair criticism. However, this lapse does not result in a finding of ineffective assistance of counsel. Mr. Branchaud had discussed the police interview in detail with Petitioner. Petitioner had told him that he did not feel coerced at the police station. Mr. Branchaud knew Petitioner had signed a Miranda waiver. Petitioner told Mr. Branchaud that the statement that he signed was accurate.

10

Mr. Branchaud had reviewed the officer's affidavit. In preparing for the Motion to Suppress, Mr. Branchaud was more concerned about what happened at Petitioner's house leading up to Petitioner going to the police station, which part of the interview was not taped. Mr. Branchaud spoke with Petitioner about what had happened at his house, and took Detective Notte's deposition to see what he could learn about what happened there, as well as at the police station. Even Petitioner's expert concludes that Mr. Branchaud's failure to review the tape was not prejudicial to the outcome of the Motion to Suppress. The expert reviewed the VHS tape and found that:

> Review of the video reflects that Miranda warnings were provided in a clear manner and waived orally and in writing. The interview while employing some Reid school techniques does not appear legally coercive or heavy-handed. Nor did those techniques result in Mr. Gergov changing his statement.

*Ex. 12*, p. 8. Before filing the Motion to Suppress, Mr. Branchaud reviewed relevant case law and discussed the suppression issue with two senior criminal defense attorneys. Under the circumstances of this case, Mr. Branchaud's failure to review the VHS tape of the interview at the police station does not constitute ineffective assistance of counsel.

Petitioner's expert argues that Mr. Branchaud needed to investigate the victim further because "[i]t was important to seek to show that Mr. Gergov's version of events was truthful and the complainant's was not." *Ex. 12*, pp 5-6. This misses an important point. Both the victim's version of the events and Petitioner's version of events met the required elements of lewd and lascivious conduct with a child. The expert emphasizes that Petitioner had a hard time articulating his sexual motivation, an element of the crime. However, it can hardly be doubted that a sexual motivation would be inferred under his version of the facts. He told the police:

> On July 9, 2010 around 4:00 AM I got up for work and went into the kitchen. My step-daughter was sleeping on the couch. She was wearing a T-shirt and panties. Her shirt was pulled up halfway her chest. I pulled her shirt down. I got curious and rubbed her buttocks on the lower part, closer to her vagina. By this time she rolled onto her side. I looked a [sic] her vaginal area but did not touch it. I looked at it over her panties. I did this for sexual reasons. I wanted to feel what it feels.

11

Petitioner also told the police that he may have accidentally touched her breast and vaginal area. It would not be difficult for the State to prove a sexual motive under these facts. Even if Petitioner's version was to be believed in its entirety, the elements of lewd and lascivious conduct with a child had been met. The expert's opinion does not properly take this factor into consideration. This was an important factor, as well, in Mr. Branchaud's decision as to when and how to investigate the victim. He understood that the victim had given different versions of what had happened and had told her mother at one point that it had not happened. However, Mr. Branchaud was aware from Petitioner's statements to the police and to him, that Petitioner had committed the crime. This was not a case where Petitioner was saying that the victim was lying and that the improper touching had never happened. Mr. Branchaud's decisions on when and how to investigate the victim and her mother were reasonable under the circumstances presented.

Petitioner's expert argues that Mr. Branchaud did not know the difference between the elements of a Lewd and Lascivious Conduct charge and a Prohibited Acts charge. It is true that when he testified at trial,[2] he could not remember the different elements. But as Mr. Branchaud also testified, that does mean that he did not know them at the time he represented Petitioner. It is clear to the court from reviewing his testimony in its entirety that he did understand the differences between the two, and had gone over the elements of Lewd and Lascivious Conduct with Petitioner.

Petitioner's expert argues that it is not clear whether Mr. Branchaud pursued a Prohibited Acts charge. However, the evidence is clear that he did pursue such a charge. However, the State was unwilling to reduce the charge. The State was well aware of Ms. Davis' testimony that her daughter had told her on one occasion that the incident had not happened. The State was also aware of her statements that it had happened. This did not change the State's opinion on the

---

[2] When the court refers to Mr. Branchaud's "trial" testimony, it is referring to his testimony in the courtroom and at deposition, inasmuch as the parties' stipulated that the court could consider deposition testimony as trial testimony.

strength of its case, and the State was unwilling to lower the charge to a misdemeanor, despite Mr. Branchaud's efforts.

Petitioner's expert argues that Mr. Branchaud's unwillingness to recommend that Petitioner take the stand at the scheduled Motion to Suppress hearing demonstrates a lack of understanding of the Criminal Rules. However, taking his testimony as a whole, the court views this as trial strategy, and not a fundamental misunderstanding of the Rules. In addition, no motion hearing was held, due to the agreement reached by the parties.

Petitioner's expert makes several other observations, but his conclusions are not based on "an objective standard of reasonableness informed by prevailing professional norms." He criticizes Mr. Branchaud's note taking policy. Mr. Branchaud testified to his policy, as follows:

> So generally I don't keep notes until I end up either preparing for trial, getting into a hearing, notes at a hearing, and generally I also write down appellate issues that I come across. If something raises or sparks an interest in me that I want to go back later, I'll make sure that I'll make a note of that, but generally I don't keep – I never have kept notes from meeting with a client in my office.

*Ex. 11*, pp. 14-15. Again, there was no testimony about the objective standard when it comes to note taking and whether Mr. Branchaud's policy violated such norms.

Petitioner's expert criticized Mr. Branchaud for not ordering a pre-plea psycho-sexual evaluation of the Petitioner. However, again, there was no testimony about the objective standard on this subject.

Petitioner's expert also questions the adequacy of the change of plea hearing and related paperwork. The expert acknowledges that "[t]he plea agreement was quite detailed and each page was initialed by Mr. Gergov." *Ex. 12*, p. 13. However, he notes that there is nothing in the record to indicate that Petitioner was advised that he would be placed on the sex offender registry for a long time and be subject to federal SORNA requirements. Generally, counsel is required to inform a defendant as to serious collateral consequences of a criminal conviction. *Padilla v.*

13

*Kentucky*, 559 U.S. 356 (2010). Sex offender registration is a common example of this type of collateral consequence. See *Chaidez v. United States*, 133 S. Ct. 1103, 1108 n.5 (2013) (listing "sex offender registration" as an effect of conviction commonly viewed as collateral). Here, the evidence shows that Mr. Branchaud went through the Special Conditions of Probation with Petitioner, including the conditions that Petitioner would enroll in sex offender treatment and comply with sex offender registration laws. This review of the conditions of probation was sufficient to put Petitioner on notice of the sex offender requirements, which is all that is required under *Padilla*. See *Padilla*, 559 U.S. at 374 (holding that counsel must inform client whether plea carries a risk of collateral consequences).

Petitioner was well aware that he would be subject to the sex offender registry requirements. At the change of plea hearing he reviewed and initialed the special term of probation that he must "comply with the sex offender registry and all relevant laws in relation to the sex offender registry and sex offender notification requirements."

Petitioner's expert also argues that Petitioner did not agree, in his plea agreement, that probation would continue "until further order of the court." Counsel is constitutionally required to inform a defendant of the length of the probationary sentence, as it is a direct consequence of a guilty plea. See, e.g., *Purdy v. United States*, 208 F.3d 41, 44–45 (2000) (explaining that defense counsel must advise defendant of the terms of a plea offer including the length of the likely sentence). However, Mr. Branchaud had advised Petitioner in advance of his change of plea that he would be under lifetime supervision. This did not affect Petitioner's willingness to go forward with the plea. Therefore, even if the court were to conclude that Mr. Branchaud's performance in this area fell below the reasonableness standard, Petitioner is unable to show any prejudice.

Petitioner's expert has argued that, but for counsel's errors, Petitioner would have received a misdemeanor charge. However, that is not the case. Both sides were aware of the

14

allegations that the victim had said different things at different times. Mr. Branchaud tried to negotiate a Prohibited Acts charge with the State. However, the State was not willing to negotiate to a lesser charge. Of course, Petitioner was free to refuse the plea offer and to go forward with the suppression motion and discovery, but that is not the route he chose. Petitioner was aware of his options when he decided to accept the plea offer.

It is important to note that even if the court had concluded that aspects of Mr. Branchaud's representation fell below the necessary standards, the Petitioner is unable to meet his burden on the second prong of the *Strickland* test, to wit, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

There is no reasonable probability that the State would have agreed to a misdemeanor charge. Although the State was aware of the potential weaknesses in its case, it demonstrated no willingness to negotiate to a lesser charge. Petitioner has not demonstrated that, but for counsel's claimed errors, that he would have insisted on going to trial. See *People v. Bien*, 661 N.E.2d 511,517 (Ill.App. 4 Dist., 1996) ("Defendant has also not shown he probably would have insisted on going to trial but for [attorney's] alleged ineffective assistance."). In this regard, Petitioner had advised his attorney that he did not want to go to trial. He said that his goals were to be able to keep his job, to be placed on probation, and not have to go to jail. Petitioner was well aware that he had committed the crime alleged. The plea agreement met his stated goals, except that he was required to serve 40 days on the weekends. Petitioner never expressed a concern about the length of his probationary sentence. He understood that it would be long term probation. Petitioner did not object to having to meet the sex offender registry requirements.

This is a case where the Vt. Supreme Court's directive in *In re Pernicka*, quoting *Strickland*, is very instructive:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

15

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance...

*In re Pernicka,* 147 Vt. 180, 183 (1986).

<u>Order</u>

Petitioner's petition for Post-Conviction Relief is *denied.*

Electronically signed on December 26, 2014 at 09:09 AM pursuant to V.R.E.F. 7(d).

Cortland Corsones
Superior Court Judge

16